UNITED STATES OF AMERICA,

          Plaintiff,

  v.                                 Case No. 25-CR-235

JUSTIN D. KAGERBAUER,

          Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorney, Abbey M. Marzick, Assistant United States Attorney for the Eastern District of Wisconsin, and the defendant, Justin D. Kagerbauer, individually and by attorney Jacob Manian pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

## CHARGE

2.      The defendant has been charged in a three-count indictment. Count One charges travel with intent to engage in illicit sexual conduct in violation of Title 18, United States Code, Sections 2423(b) and 2423(f). Count Two charges child enticement in violation of Title 18, United States Code, Section 2422(b). Count Three charges distribution of child pornography in violation of Title 18, United States Code, Section 2252A(a)(2)(A).

3.      The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

1

4.     The defendant voluntarily agrees to plead guilty to Counts One and Three of the indictment, as follows:

## COUNT ONE
### (Attempted Travel With Intent to Engage in Illicit Sexual Conduct)

**THE GRAND JURY CHARGES THAT:**

On or about November 27, 2025, in the State and Eastern District of Wisconsin and the State and Northern District of Illinois,

**JUSTIN D. KAGERBAUER**

did attempt to travel in interstate and foreign commerce for the purpose of engaging in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(g), with a person he believed to be a nine-year-old girl.

In violation of Title 18, United States Code, Sections 2423(b) and 2423(f).

## COUNT THREE
### (Distribution of Child Pornography)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     On or about November 7, 2025, in the State and Eastern District of Wisconsin and elsewhere,

**JUSTIN D. KAGERBAUER**

knowingly distributed child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), using a means and facility of interstate and foreign commerce, that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, and which contained material that had been shipped and transported by a means and facility of interstate and foreign commerce, including by computer.

2

2. The child pornography distributed by the defendant included a digital video identified by the following partial file name:

| File name ending 03_905.mp4 | A two-minute and 25-second long video depicting an adult woman performing sex acts (including oral sex and digital penetration) on a pre-pubescent female child, who appeared to be between 6-8 years old. |
|---|---|

All in violation of Title 18, United States Code, Section 2252A(a)(2)(A).

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt. The information set forth in Attachment A is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

6. The government agrees to dismiss Count Two of the indictment at the time of sentencing.

**PENALTIES**

7. The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carries the following penalties. Count One: a maximum of 30 years' imprisonment, at least five years up to life of supervised release; up to a $250,000 fine; and a mandatory special assessment of $100, as set forth in 18 U.S.C. § 3013. Count Three: mandatory minimum five years' imprisonment, up to 20 years' imprisonment; at least five years up to life of supervised release; up to a $250,000 fine; and a mandatory special assessment of $100, as set forth in 18 U.S.C. § 3013.

3

The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regards to restitution are set forth in paragraphs 27-30 of this agreement.

8.  The defendant acknowledges, understands, and agrees that he has discussed the relevant statute as well as the applicable sentencing guidelines with his attorney.

## ELEMENTS

9.  The parties understand and agree that in order to sustain the charge of attempted travel with the intent to engage in a sexual act with a minor as set forth in Count One, the government mut prove each of the following propositions beyond a reasonable doubt:

First:      The defendant attempted to travel in interstate commerce; and

Second:   The defendant's purpose in traveling in interstate commerce was to engage in a sexual act with a minor.

10.  The parties understand and agree that in order to sustain the charge of distribution of child pornography as set forth in Count Three, the government must prove each of the following propositions beyond a reasonable doubt:

First:      The defendant knowingly distributed the material identified in the indictment; and

Second:   The material identified in the indictment is child pornography; and

Third:     The defendant knew that one or more of the persons depicted were under the age of eighteen years; and

Fourth:    The material identified in the indictment has been mailed, shipped, or produced using materials that have been mailed, shipped, or produced in or affecting interstate or foreign commerce.

4

**SENTENCING PROVISIONS**

11.     The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12.     The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

**Sentencing Guidelines Calculations**

13.     The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

**Relevant Conduct**

14.     The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

5

## Base Offense Level

15.     The parties agree that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 24 under Sentencing Guidelines Manual § 2G1.3(a)(4). The parties agree that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in Count Three is 22 under Sentencing Guidelines Manual § 2G2.2(a)(1).

## Specific Offense Characteristics

16.     The parties agree to recommend to the sentencing court that a two-level increase under Sentencing Guidelines Manual §2G2.2(b)(2) is applicable to Count Three because the offense involved material involving a prepubescent minor or a minor who had not attained the age of 12 years.

17.     The parties agree to recommend to the sentencing court that a two-level increase under Sentencing Guidelines Manual §2G2.2(b)(6) is applicable to both Count One and Count Three because the offenses involve the use of a computer.

## Acceptance of Responsibility

18.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offenses prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level

decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

**Sentencing Recommendations**

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

21. The parties agree that they will make a total joint recommendation of 96 months' imprisonment.

**Court's Determinations at Sentencing**

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

7

## FINANCIAL MATTERS

24.     The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction.   The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.  If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25.     The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Special Assessment

26.     The defendant agrees to pay the mandatory special assessment in the amount of $200, pursuant to 18 U.S.C. § 3013, prior to or at the time of sentencing or upon further order of the court.

### Restitution

27.     The defendant agrees to pay restitution to any victim, including any victim directly or indirectly harmed by defendant's relevant conduct as part of the agreement in whatever amount

8

the Court may order, pursuant to 18 U.S.C. §§ 3663, 3663A and 3771. Defendant agrees to pay full restitution comprising all proven losses caused by the offenses of conviction and relevant conduct to the victims regardless of the count of conviction. This includes relevant conduct and any child sexual abuse material found on the defendant's electronic devices. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court. A restitution amount in excess of what Defendant believes is appropriate will not be a basis for his withdrawal from this agreement.

28. The defendant agrees, pursuant to 18 U.S.C. § 3664(d)(5), that the court may defer the imposition of restitution until after the sentencing, and consents to the entry of any orders pertaining to restitution imposed in accordance with 18 U.S.C. § 3664(d)(5). Such restitution shall be due and payable immediately.

29. The defendant understands that because restitution for the offenses is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands the imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action

30. Pursuant to 18 U.S.C. § 3663, the defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses for victims of the conduct described in the charging instrument, statement of facts, and any relevant conduct, specifically including the minors identified as a victim by law enforcement. The defendant agrees that the minors are properly considered a "crime victim" under 18 U.S.C. § 3771 and are therefore afforded all enumerated rights under that section. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to

9

oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable ten days prior to sentencing.

## Forfeiture

31. The defendant agrees to forfeit his electronic devices that were seized during the search warrant, and the defendant agrees to an immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in these devices. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement. The parties agree that the forfeiture of these devices will be determined by the court prior to or at the time of sentencing.

## DEFENDANT'S WAIVER OF RIGHTS

32. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a.    If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b.    If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

10

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

33. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offenses to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

34. The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

35. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

11

36.     The defendant knowingly and voluntarily waives any claim or objection he may have based on venue.

37.     Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence and further waives his right to challenge his convictions or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

### Further Civil or Administrative Action

38.     The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

12

## MISCELLANEOUS MATTERS

39.     Pursuant to 18 U.S.C. § 3583(d), the defendant has been advised and understands the court shall order as a mandatory condition of supervised release, that the defendant comply with state sex offender registration requirements. The defendant also has been advised and understands that under the Sex Offender Registration and Notification Act, a federal law, he must register and keep the registration current in each of the following jurisdictions: the location of his residence; the location of his employment; and, if he is a student, the location of his school. Registration will require that the defendant provide information that includes, name, residence address, and the names and addresses of any places at which he will be an employee or a student. The defendant understands that he must update his registration not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations may subject him to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine and/or imprisonment.

## GENERAL MATTERS

40.     The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

41.     The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

42.     The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The

13

defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

43.　The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

## VOLUNTARINESS OF DEFENDANT'S PLEA

44.　The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

14

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 4/29/2026

JUSTIN D. KAGERBAUER
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 5-1-26

JACOB MANIAN
Attorney for Defendant

For the United States of America:

Date: 5/1/26

ABBEY M. MARZICK
Assistant United States Attorney

15

## ATTACHMENT A

**Summary of facts**

a.  In September 2025, HSI Milwaukee was contacted by HSI Attache in London, England, UK for assistance on a child exploitation investigation involving a subject living and working in the Eastern District of Wisconsin. While operating in an undercover (UC) capacity in the UK, the subject expressed repeated interest to the UC to travel to the UC to engage in sexual activity with a minor female. **The UK UC was the purported aunt (hereinafter "UC Aunt") to the purported UK UC eight-year-old child (hereinafter "UC Child"). UC Aunt claimed to be sexually active with UC Child.**

b.  The defendant first came to the attention of UK law enforcement on **IMGSRC.**[1] The UK UC had two profiles on IMGSRC: the UC Aunt profile and a *second profile who was an adult male with sexual interest in children.* The defendant communicated with the second UC profile multiple times in March 2025 and they discussed their mutual sexual interest in young girls. They eventually switched their chats to the MegaNZ[2] platform. The defendant told the UC that his preferred age of girls was **"6-16 plus or minus a little."** The defendant also said that he was 45 years old, from the United States, and had plans to travel to the UK soon. On March 13, 2025, the defendant told the second UC profile that he was currently in Liverpool, UK, and that his 18-year-old son was looking to go to school there to play soccer. The chat between the defendant and the UC ended on March 31, 2025, after the defendant sent the UC a message to which the UC did not respond.

c.  On March 12, 2025, UC Aunt posted a photo on IMGSRC of a young girl wearing a pink top and denim shorts with the comment "cute." On March 13, 2025, the defendant emailed UC Aunt from a Tuta[3] mail account saying "Hey, saw your 'cute' comment and couldn't agree more. Love your username as well. Would love to chat more." The next day, UC Aunt responded, introducing herself as a 33-year-old female from the UK. The defendant introduced himself as **"Justin"** and discussed him being in Liverpool, UK, for a "football opportunity for [his] son." The defendant told UC Aunt that his son hoped to attend university in the UK in the fall of 2025. The defendant and UC Aunt switched their communication to MegaNZ.

d.  They quickly turned their conversation to UC Aunt's sexual activity with her 8-year-old niece (UC Child). UC Aunt asked the defendant if he had sexual experience with kids and the defendant said," **"I have no experience, but I would love to. It would be a dream come true. I can only imagine how awesome it would be."** UC Aunt told the defendant that it was a shame that he was returning to the US soon, suggesting that she, UC Child, and the defendant could have met up. The defendant replied, **"I would have loved that. Just thinking about that opportunity drives me crazy. Everything about them is so perfect."**

---

[1] www.IMGSRC.ru is a Russian hosting website and is known for users who have a common sexual interest in children. The website allows users to comment on photos and directly contact other users.

[2] MegaNZ is based in New Zealand and is known for its secure storage and link sharing capabilities, and also has a secure instant messaging function.

[3] Tuta is a Germany-based encrypted email provider.

e. The defendant and UC Aunt switched their communication platform from MegaNZ to Telegram in late August 2025, after the defendant's MegaNZ account was terminated.

f. The defendant was identified multiple ways, including his own self-identifying statements such as his name, location, occupation (including a photo sent to UC Aunt from his workplace), family and hobbies. He was also identified by IP address linking to his residence and place of work (both in the Eastern District of Wisconsin) and subscriber information. Travel records showed that the defendant traveled from Chicago to Manchester, UK, in March 2025, which is consistent with his statements to both UC profiles.

g. The defendant and UC Aunt chatted on dozens of occasions between March 2025 through November 2025. The defendant consistently and repeatedly expressed his sexual interest in pre-pubescent girls, specifically with UC Child. The following are a few examples from the chats. On April 17, 2025, at 2:30 PM, UC Aunt asked the defendant what he wanted to do with UC Child and the defendant replied, **"Mmmm…that is a great questions. Licking sounds amazing. I would love to explore every inch of her soft skin, hear her giggle, pleasure her every way I can."** On July 17, 2025, the defendant told UC Aunt, **"First I would love to taste [UC Child's lips] on mine. I would love to feel how soft and gentle they feel against my lips. Taste how her sweet saliva tastes. Feel how gentle of a soul she is"** and **"After some nice kissing and touching, I would love to feel how those soft lips and hands would feel sucking and kissing down lower. Having her learn what she can do with her mouth to pleasure males. I would love for her to try different things to see how she enjoys it and how it creates enjoyment in others."** On July 31, 2025, the defendant told UC Aunt that it makes him **"so horny"** to think about an adult performing oral sex on a female child.

h. In the late summer 2025, the defendant told UC Aunt of his plans to visit his son in Liverpool, UK, in November 2025 and he reiterated that he wanted to also meet her and UC Child to engage in sexual activity. UC Aunt asked him if he was serious about coming. The defendant told her that he is **"not stringing her along."** On September 24, 2025, he told UC Aunt that he is **"most definitely"** planning to see her and UC Child in November 2025 and told her that it is a **"fantasy come true."**

i. On October 1, 2025, the defendant told UC Aunt, **"I am looking forward to licking and tasting ["Skye"] so bad right now!"** UC Aunt asked the defendant if he planned to use his penis on the child. The defendant said, **"Touching my penis to her soft pussy would be incredible and being inside her would be a fantasy come true."** He also told UC Aunt that he views child pornography online.

j. On October 8, 2025, the defendant told UC Aunt that he was booking his tickets soon and that he planned to see her at the beginning of his trip to the UK, *before* seeing his son in Liverpool. He added that **"it would be fun to see both of you [UC Aunt and UC Child] again before [he] left if the first visit went well."**

k. On October 15, 2025, the defendant told UC Aunt that he bought his ticket, arriving in London on Friday morning, November 28. He asked her how far she is from Heathrow Airport and she said about one hour and 40 minutes.[4]

---

[4] This is 1 hour and 40 minutes in the *opposite* direction of where the defendant's son lived. The drive from Kent to

l.  Travel records from Jet Blue showed that the defendant was booked on a flight from Chicago O'Hare airport to JFK airport on November 27, 2025, then transferring planes at JFK in New York to travel to London Heathrow, arriving early the following morning.

m.  The defendant and UC Aunt also talked on the phone three times, via Telegram (October 13, 2025, October 27, 2025, and November 3, 2025). These calls were recorded. They spoke about the ages of girls to whom they were sexually attracted, and the defendant said 7-14. UC Aunt expressed concern that the defendant was only saying things to make her happy, but the defendant reassured her that he wanted this to happen on his own accord. After the phone call, he sent UC Aunt a message apologizing for his shyness and saying that he fantasized about UC Child putting her hand on his penis and bringing it towards her mouth. The defendant reiterated his intent to engage in sexual activity with UC Child in his upcoming trip. During the November 3 call, they both discussed their nerves and they agreed to send each other CSAM (child sexual abuse material) videos to show they were both genuine about their intentions and plans.

n.  On October 15, 2025, the defendant messaged UC Aunt that he booked his flight and he is arriving in London the morning of Friday, November 28. On October 28, 2025, the defendant told UC Aunt that it **"calms his fears"** when they speak on the phone and that he is **"counting down the days"** until he meets her and UC Child in person. The user told UC Aunt that having sexual contact with UC Child would be fulfilling a **"fantasy [he] has had for a very long time."**

o.  On November 7, 2025, the defendant sent UC Aunt a two-minute and 25-second long CSAM video, described in detail in Count Three of the indictment. During this conversation, UC Aunt also sent the defendant a similar CSAM video. After receiving the video, the defendant responded with, "Oh my goodness, that is amazing!!!! She is so perfect! I love her smooth perfect little pussy, it is so amazing! That has to be the most amazing thing in the world to touch, and taste! I can only imagine what that is going to feel like not only to touch my hands and tongue but to have my penis up against and maybe a little inside that perfect little pussy. It is making me so hard right now, just seeing that and thinking about it." UC Aunt said, "Mhmm I am so glad you love it and cant wait for you to enjoy her as much as I do." The defendant said, "Oh my goodness yes! I am so thankful you are willing to share her."

p.  On November 25, 2025, the defendant told UC Aunt that he hoped to sleep on the plane and commented that he hoped UC Child will "keep him awake" on Friday, November 28. They agreed to first meet up in a public place. They both commented that they are nervous. The defendant told UC Aunt that "hopefully everyone has an amazing time that they would want to do it again sometime in the future."

q.  On November 26, 2025, the defendant told UC Aunt that he just checked in for his flight, that he is very excited, and that he couldn't sleep last night.

r.  The defendant was arrested at Chicago O'Hare airport shortly before his flight was set to take off. He had carry-on bags and two phones on his person. The defendant previously told UC Aunt that he uses a "dirty" phone for his chats with her, and this was consistent with the two phones that he had on his person at the time of his arrest.

---

Liverpool is over four hours.